1 **JOSEPH FARZAM LAW FIRM**
Joseph S. Farzam, Esq. (SBN 210817)
2 e-mail farzam@lawyer.com
1875 Century Park East, Suite 1345
3 Los Angeles, California  90067
Telephone No.: 310.226.6890
4 Fax No.: 310.226.6891

Attorneys for Plaintiff
MARIO YEPEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO YEPEZ, *individually and on behalf of all others similarly situated and as private attorneys general*,<br><br>Plaintiff,<br><br>vs.<br><br>MAINSTAY BUSINESS SOLUTIONS and BLUE LAKE RANCHERIA TRIBE OF CALIFORNIA,<br><br>Defendants. | Case No.  CV07-8067 FMC (VBKx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12 MOTION TO DISMISS**<br><br>Date:      April 21, 2008<br>Time:     10:00 a.m.<br>Place:    Courtroom No. 750<br><br>Hon. Florence-Marie Cooper |

   COMES NOW Plaintiff MARIO YEPEZ, through his counsel of record, JOSEPH FARZAM LAW FIRM, and opposes Defendants MAINSTAY BUSINESS SOLUTIONS and BLUE LAKE RANCHERIA TRIBE OF CALIFORNIA (BLUE LAKE) doing business as MAINSTAY BUSINESS SOLUTIONS ("Mainstay") motion to dismiss under Fed. R. Civ. P. 12(b)(1)-(3).  The Court has proper subject matter and personal jurisdiction, and venue is proper in this district given that the alleged violations of federal wage laws, particularly the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., occurred in Los Angeles, not on tribal lands and do not involve tribal issues.   Mainstay has failed to show that Plaintiff signed any agreement consenting to exclusive jurisdiction by the Blue Lake Rancheria Tribal Court, which he, in fact denies. *See* Declaration of Mario Yepez.

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Defendants' Motion to Dismiss Based on Lack of Jurisdiction Should Be Denied As This Matter Does Not Involve Actions on Tribal Lands Nor Involving Tribal Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Defendants' Motion to Dismiss For Improper Venue Based On a Forum Selection Provision Should Be Denied As Defendants Have Failed to Meet Their Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## CASES

*Argueta v. Banco Mexicana, S.A.*
    87 F.3d 320 (9th Cir. 1996) .......................................... 10

*Boxx v. Long Warrior*
    265 F.3d 771 (9th Cir. 2001) .......................................... 6

*Chan v. Society Expeditions, Inc.*
    39 F.3d 1398 (9th Cir. 1994) .......................................... 10

*Data Disc., Inc. v. System Technology Assoc., Inc.*
    557 F.2d 1280 (9th Cir. 1977) .......................................... 9

*Dole Food Co. v. Watts*
    303 F.3d 1104 (9th Cir. 2002) .......................................... 11

*Home Ins. Co. v. Thomas Industries, Inc.*
    896 F.2d 1352 (11th Cir. 1990) .......................................... 10

*Hunt Wesson Foods Inc. v. Supreme Oil Co.*
    817 F.2d 75 (9th Cir. 1987) .......................................... 12

*Iowa Mut. Ins. Co. v. LaPlante*
    480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) .......................... 3

*Montana v. United States*
    450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) ..................... 3

*Murphy v. Schneider Nat'l Inc.*
    362 F.3d 1133 (9th Cir. 2004) ...................................... 10, 11

*Myrick v. Devils Lake Sioux Manufacturing Corp.*
    718 F.Supp. 753 (D.N.D.1989) .......................................... 7, 8

*Nevada v. Hicks*
    533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ................ 5

*Nord v. Kelly*
    474 F.Supp.2d 1088 (D.Minn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ochoa v. J.B. Martin & Sons Farm Inc.*
    287 F.3d 1182, n.2 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Orchid Biosciences, Inc. v. St. Louis Univ.*
    198 F.R.D. 670 (S.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*
    741 F.2d 273 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. Salish Kootenai Coll.*
    434 F.3d 1127 n. 4 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State of Mont. Dept. of Transp. v. King*
    191 F.3d 1108 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Strate v. A-1 Contractors*
    520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997) . . . . . . . . . . . . . . . . . 4

    520 U.S. at 445, 117 S.Ct. 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tidwell v. Harrah's Kansas Casino Corp.*
    322 F. Supp.2d 1200 (D.Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. Santa Ynez Band of Chumash Mission Indians*
    983 F.Supp. 1317 (C.D. Cal.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vance v. Boyd Mississippi, Inc.*
    923 F.Supp. 905 (S.D.Miss.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*WNS, Inc., v. Farron*
    884 F.2d 200 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12 MOTION TO DISMISS**

# I.
# INTRODUCTION

Defendant Mainstay explains on its website, www.mainstaybusiness.com, that it provides employment services, such as assuming a wide variety of responsibilities for their California clients, including payroll processing and taxes, human resources administration and compliance, benefits administration, and oftentimes Workers' Compensation coverage for their workers. They say that they can also help with labor relations, recruiting, training, and other employment-related activities in California. They proclaim that "More and more, California businesses are turning to Mainstay." By taking on these duties for California employers, Mainstay cannot avoid claims based on violation of federal and California law by asserting only its Tribal Court has jurisdiction to hear such claims.

Plaintiff Mario Yepez, who is in his 60s and hired by Mainstay to work as a janitor for one of their clients in Los Angeles, was fired by Mainstay in April 2007 after working approximately 5 months. He was told by his supervisor that he was being fired because they did not have any work for him; he believes he was let go based on age discrimination. As pleaded in his Complaint, Mr. Yepez has asserted causes of action for unfair competition, including for age discrimination, under California's Labor Code Private Attorneys General Act of 2004, the FLSA, and for declaratory relief.

Among the allegations he makes in his Complaint, Mr. Yepez alleges he entered into various employment relationships and/or contracts requiring him to work in excess of 40 hours per week ("overtime") in non-exempt hourly positions for Mainstay. For work performed in excess of 40 hours per week, he asserts Mainstay did not pay him, nor its other non-exempt California employees, compensation at a rate in compliance with the FLSA, including not paying for overtime at a rate of not less than one and one-half times the "regular rate" at which they were employed within the meaning of 29 U.S.C. § 207(a)(1). Complaint ¶15.

Mainstay seeks to dismiss based on a claimed lack of jurisdiction, asserting that they are immune from suit in federal court based on the doctrine of tribal exhaustion. As they know that such has many exceptions, including those applicable to this case, Mainstay also make the argument in the alternative that Mr. Yepez agreed to a forum selection provision requiring his suit to be heard in a Tribal Court. They fail, however, to proffer any evidence that Mr. Yepez signed such an agreement. In fact, he declares he did not. Accordingly, Plaintiff requests that the Court deny Defendants' motion to dismiss.

## II.

## ARGUMENT

### A. Defendants' Motion to Dismiss Based on Lack of Jurisdiction Should Be Denied As This Matter Does Not Involve Actions on Tribal Lands Nor Involving Tribal Rights.

Defendants seek to dismiss based on the doctrine of tribal exhaustion, which is a judicially created rule, dictated by comity rather than jurisdictional concerns. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15-18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). The doctrine generally provides that the parties to any case arising on Indian land or involving tribal rights must exhaust their tribal remedies before turning to the federal courts for relief. As a preliminary matter, there is no dispute that this action did not arise on tribal lands, and Plaintiff is not a member of any tribe.

As the Supreme Court explained, in general, the inherent powers of an Indian tribe do not extend to the activities of nonmembers of the tribe, absent an express delegation by treaty or statute. *See Strate, infra,* 520 U.S. at 445-46, 117 S.Ct. 1404 (*citing Montana v. United States*, 450 U.S. 544, 565, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)). Plaintiff seeks no tribal remedy, rather he seeks remedies provided under federal wage law and California statutes concerning work performed in the State of California. Mainstay has waived jurisdiction of the Tribal Court by voluntarily doing business in Los Angeles with non-Tribal members.

1  Several exceptions to tribal jurisdiction have also developed, including
2  excluding from tribal jurisdiction claims where there is harassment or bad faith by
3  the tribal court, violations of express jurisdictional prohibitions, futility, and lack of
4  tribal jurisdiction.  In this case, it would be futile to bring Plaintiff's claims before
5  the Tribal Court as the action did not occur on tribal lands.  No witnesses are within
6  the Tribal Court's jurisdiction.  The assertion of jurisdiction is also made in bad faith
7  in so far as Mainstay is trying to misuse a protection so as to violate federal wage
8  laws when competing with other employment service companies in Los Angeles.
9      Courts, including the U.S. Supreme Court and Ninth Circuit Court of Appeals,
10 have in a number of cases held that the tribal exhaustion doctrine, upon which
11 Mainstay relies, will not apply in cases that do not impact on tribal law or tribal
12 affairs.  For example, in *Strate v. A-1 Contractors*, 520 U.S. 438, 117 S. Ct. 1404,
13 137 L. Ed. 2d 661 (1997), the United States Supreme Court held that tribal courts
14 could not adjudicate an action against non-Indian drivers regarding an accident
15 which occurred on a public highway maintained by the State pursuant to a federally
16 granted right-of-way over Indian reservation land.  Even though the action arose
17 from an event on Indian land, the Court noted that requiring the defendants to defend
18 against this commonplace state highway accident claim in an unfamiliar court did
19 not serve to protect tribal self-government nor to contribute to tribal political
20 integrity, economic security, health or welfare.  The Court therefore held that the
21 tribal exhaustion requirement would serve no purpose other than delay, and thus
22 there was no need to exhaust the tribal courts before turning to the federal courts.
23 Likewise here, there is no threat to tribal political integrity, economic security, health
24 or welfare in this action based on alleged failures by Mainstay, in acting on behalf of
25 a non-tribal company, to pay an employee what he is owed under federal and state
26 wage laws.  The action does not arise from activities on Indian land nor involves the
27 political authority of any Tribe as to internal security, health or welfare.
28

1    Likewise in *Nevada v. Hicks*, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d
2    398 (2001), the United States Supreme Court held that a tribal court did not have
3    jurisdiction to adjudicate § 1983 claims or tort claims even by a tribe member against
4    state officials regarding their execution of a search warrant on reservation land for
5    evidence of an off-reservation crime.  While the Court found no evidence of bad
6    faith, harassment, violation of express jurisdictional prohibitions, or futility, it did
7    find that because the instant case involved non-Indians and non-Indian law,
8    adherence to the tribal exhaustion requirement would serve no purpose other than
9    delay and was therefore unnecessary.  The Court concluded that the petitioners were
10   not required to exhaust their claims in the tribal court before bringing them in the
11   federal district court.   Here, there is no purpose other than delay, to have Mr.
12   Yepez's claim sent to a Tribal Court.  His claims do not involve Tribal law but
13   federal and state wage laws for actions in Los Angeles.   The Los Angeles business,
14   for which Mainstay agreed to act as employer, where Mr. Yepez worked is not a
15   Tribal entity.  In essence, this case, like *Hicks*, involves non-Indians and non-Indian
16   law concerning an employee's claim for overtime.  There would be no purpose in
17   having a Tribal Court hear the matter other than a dilatory tactic to discourage
18   claims.
19       Furthermore, the Ninth Circuit has also found limitation to the exhaustion
20   principle on which Mainstay relies.  For example, in *State of Mont. Dept. of Transp.*
21   *v. King*, 191 F.3d 1108 (9th Cir. 1999), the appellate court held that a state was not
22   required to exhaust tribal remedies before bringing suit in federal court for
23   affirmation that it was not required to comply with a tribal affirmative action policy
24   when repairing a state highway crossing a reservation. The court concluded that the
25   defendant Indian community did not have the authority to regulate the state's
26   employment practices by its Tribal Employment Rights Ordinance, and therefore the
27   state did not need to exhaust tribal remedies in any matter regarding those practices.
28   *See also U.S. v. Santa Ynez Band of Chumash Mission Indians,*  983 F.Supp. 1317

1  (C.D. Cal.1997)(Letts, J.)(holding United States was not required to exhaust its
2  remedies in tribal court system before bringing action in federal court).  As a private
3  attorney general, Plaintiff deed not exhaust tribal remedies to ensure that Mainstay,
4  in assuming the role of employer on behalf of a non-tribal Los Angeles entity,
5  complied with federal and state labor laws while operating in Los Angeles.  The
6  Tribal Court does not have jurisdiction over discrimination claims by Mr. Yepez nor
7  his claim under the FLSA.
8       Again, in *Boxx v. Long Warrior*, 265 F.3d 771 (9th Cir. 2001), *as amended on*
9  *denial of reh'g and reh'g en banc,* (Nov. 20, 2001) and *cert. denied*, 122 S. Ct. 1790,
10 152 L. Ed. 2d 649 (U.S. 2002), *disapproved on other grounds, Smith v. Salish*
11 *Kootenai Coll.*, 434 F.3d 1127, 1137 n. 4 (9th Cir.2006);  the Ninth Circuit Court of
12 Appeals held that a non-Indian did not have to exhaust tribal remedies before turning
13 to the federal courts in an action concerning an automobile accident which occurred
14 on non-Indian fee land located within a tribal reservation's boundaries, and over
15 which the tribal court did not have jurisdiction. The non-Indian was the driver of the
16 vehicle in which the passenger, an Indian, was injured. The Indian sued the driver in
17 tribal court, and the non-Indian sought an injunction in federal court barring the
18 tribal court action. The court held that the tribal court did not have jurisdiction over
19 this action, because the relationship between the driver and the passenger did not
20 involve commercial dealings as would permit the exercise of jurisdiction; and,
21 further, because the instant suit did not involve conduct that threatened or had some
22 direct effect on the political integrity, economic security, or health and welfare of the
23 tribe, as would provide an alternative basis for jurisdiction. The court concluded
24 therefore that the non-Indian driver was not required to exhaust his tribal remedies.
25 *See also Nord v. Kelly,* 474 F.Supp.2d 1088 (D.Minn. 2007).
26      Likewise here, Mr. Yepez's  action does not involve a commercial contract
27 that has any direct effect on the political integrity, economic security, or health and
28 welfare of the tribe.   The Tribal Court does not have jurisdiction over a non-

commercial relationship between employee and employer.  Moreover, this case does involve ensuring that when Mainstay is competing with other business in Los Angeles that none have an unfair competitive advantage by avoiding federal and state labor laws.  It would make little sense to transfer such a claim to the Tribal Court.

Nor can Mainstay avoid federal law and discriminate against a Californian in Los Angeles using the exhaustion principle as a dilatory tactic.  For example, in *Tidwell v. Harrah's Kansas Casino Corp.* 322 F. Supp.2d 1200 (D.Kan. 2004), the court held that a Non-tribal employee of casino owned by the Potawatomi Indian Nation did not have to pursue claims for discrimination based on federal and state law.  Plaintiff Janice Tidwell filed a complaint against her employer, Harrah's, the operator of the casino, alleging violations of Title VII and the Kansas Act Against Discrimination. Harrah's operates the casino pursuant to an Operating Agreement it entered into with the Potawatomi Indian Nation, and the operation of the casino is conducted under the terms of the Indian Gaming Regulatory and the Prairie Band Potawatomi Nation--Kansas Gaming Compact (Compact).  Plaintiff argued that the doctrine does not apply because no Indian sovereignty concerns are implicated by her suit, the assertion of tribal court jurisdiction is motivated by bad faith, and tribal court action would violate express and implied jurisdictional prohibitions. The Court stated that it would find it difficult to discern what sovereignty concerns are threatened by plaintiff's suit, as the only connection with the tribe is the casino's location on the reservation.

The *Tidwell* court noted that its independent research disclosed only two cases involving the tribal exhaustion doctrine and Title VII claims. In *Myrick v. Devils Lake Sioux Manufacturing Corp.*, 718 F.Supp. 753, 755 (D.N.D.1989),  the court declined to apply the tribal exhaustion doctrine to a age discrimination case brought by a tribal member. The court held concerns of tribal self government were not implicated because there was no challenge to the jurisdiction of the tribal court, the

. CV07-8067 FMC (VBKx)
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12 MOTION TO DISMISS**
-7-

tribe was not a party, and the case presented issues of federal law.  It noted that Tidwell had a stronger case against the doctrine because she was a non-tribal member.

Similarly, in *Vance v. Boyd Mississippi, Inc.*, 923 F.Supp. 905, 911 (S.D.Miss.1996),  a non-tribal employee sued its non-tribal company employer for Title VII violations. The Vance court found exhaustion was not required because the case involved a dispute between two non-Indians concerning issues of federal law, the employee was not challenging a tribal ordinance or its applicability to her situation, and there was no pending tribal court proceeding or attack on the jurisdiction of the tribal court.  In light of *Myrick, Vance* and the lack of connection to tribal self government the instant case presents, *Tidwell* court concluded that the arguments raised concerning threatening tribal sovereignty were tenuous at best.

As demonstrated in these cases, Mr. Yepez, a non-tribal employee who did not work on tribal lands, was employed to work in Los Angeles for a non-tribal company that utilized Mainstay to act as the "employer."  *See* Defendants' Exhibit E ("I acknowledge that Mainstay Business Solutions has entered into a staffing arrangement with my Worksite Company.  I acknowledge that Mainstay Business Solutions is my employer for all payroll, workers' compensation coverage and unemployment compensation matters.").  By voluntarily entering into a staffing arrangement with a Los Angeles company, Mainstay voluntarily waives its claims to sovereign immunity and submits to jurisdiction to courts in this district.   Mr. Yepez's action does not involve threatening tribal sovereignty by requiring it to respond as any other employer in Los Angeles, as Mainstay has chosen to act in this capacity.  For all these reasons and those discussed above, Plaintiff accordingly requests Defendants' motion be denied.

1  B.  <u>Defendants' Motion to Dismiss For Improper Venue Based</u>
2  <u>On A Forum Selection Provision Should Be Denied As</u>
3  <u>Defendants Have Failed to Meet Their Burden of Proof.</u>

Recognizing the several exceptions to tribal jurisdiction, including those discussed above, Mainstay makes the alternative argument that venue is improper based on a forum selection provision in various documents, which Mr. Yepez did not sign. Where, as here, "plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc., Inc. v. System Technology Assoc., Inc.* 557 F.2d 1280, 1285 (9th Cir. 1977). "Any greater burden - such as proof by a preponderance of the evidence" is not required in responding to a motion to dismiss under Rule 12. *See Data Disc.*, 557 F.2d at 1285. Moreover, where the jurisdictional facts are "intertwined with the merits of the action," it is preferable to defer until trial the determination so that plaintiff may present the case in a coherent, orderly fashion, and without prejudice to their case on the merits. *Data Disk*, 557 F.2d at 1285-1286, n.2. The court may also continue the motion in order to permit discovery. *See Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001) [not requiring plaintiff to make prima facie showing for jurisdictional discovery]. According, Mr. Yepez requests the Court deny Mainstay's motion as premature, given his allegations show that Mainstay violated federal wage laws in employing him in Los Angeles. He request discovery to be taken so that he may support his allegations concerning Mainstay activities in the forum.

In deciding whether a prima facie case has already been made as to the allegations themselves, uncontroverted allegations in the complaint are deemed true and factual conflicts in the parties' declarations are resolved in plaintiff's favor. *WNS, Inc., v. Farron*, 884 F.2d 200, 204 (5th Cir. 1989). There is no dispute that Mainstay is operating its business in Los Angeles, making personal jurisdiction and venue appropriate in this court. *See* Complaint ¶13. Mainstay does not dispute

service of process being appropriately made.  As such, service of the summons in a federal action establishes personal jurisdiction over the defendant "who could be subjected to the jurisdiction of the court of general jurisdiction in the state in which the district is located." *See* Fed. R. Civ. P. 4(k)(1)(A); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404-1405 (9th Cir. 1994).  "Jurisdiction may be established with a lesser showing of minimum contacts if considerations of reasonableness dictate." *Ochoa v. J.B. Martin & Sons Farm Inc.*, 287 F.3d 1182, 1188, n.2 (9th Cir. 2002) [finding nonresident employer whose agent recruited workers locally was subject to local jurisdiction]

Mainstay challenges venue on the basis of a purported forum selection provision. Although courts are split on whether a motion to dismiss pursuant to a contractual forum-selection clause should be treated as a motion under Rule 12(b)(1) (lack of subject matter jurisdiction) or 12(b)(3) (improper venue) or 12(b)(6) (failure to state a claim), most courts hold that such motions are treated as one for improper venue under Rule 12(b)(3). *See Argueta v. Banco Mexicana, S.A.* 87 F.3d 320, 324 (9th Cir. 1996).  Mainstay takes this approach.

The court ruling on such a motion based on a forum-selection provision must draw all reasonable inferences and resolve all factual conflicts in favor of party opposing enforcement of the clause. *Murphy*, *infra,* 349 F.3d at 1229; *see also Home Ins. Co. v. Thomas Industries, Inc*. 896 F.2d 1352, 1355 (11th Cir. 1990).  In this case, there is more than a reasonable inference that Mainstay's provision does not apply given the lack of showing by defendants that plaintiff agreed to it and the fact that he denies ever getting it.

As explained by the Ninth Circuit in *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133(9th Cir. 2004) courts, when considering a Rule 12 motion to dismiss without an evidentiary hearing, must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. 362 F.3d at 1138. As the *Murphy* court noted, this standard also comports with the

approach taken by the Ninth Circuit with other Fed. R. Civ. P. 12 motions, including Rule 12(b)(2). *Murphy*, 362 F.3d at 1138 *(citing Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir. 2002) (holding that in the context of a Rule 12(b)(2) motion for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its favor)). This should not be surprising, explained the *Murphy* court, given the practical realities underlying Rule 12(b) motions:

> These motions are typically made early in litigation when the factual record is undeveloped and granting a Rule 12(b) motion will terminate the case in the selected forum. In this procedural posture, if the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum-selection clause, the non-moving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute.

*Id.* at 1139. Where the district court does not hold an evidentiary hearing, "the fact issues pertinent to the enforceability of the forum-selection clause are to be viewed in the light most favorable" to the non-moving party. *Id.* at 1140.

When considering a forum-selection provision, a court may consider facts outside of the pleadings to consider whether there is some evidence showing that the particular provision may be unreasonable. *See Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984). In this case, not only has Mainstay failed to show any consent on behalf of the Mr. Yepez to resolve disputes only under its procedures in a Tribal Court, but also Mr. Yepez denies he was ever given or consented to such provisions.

Mainstay's Exhibit E provides "Please acknowledge receipt of this handbook by signing and returning this page to your Worksite Supervisor or Mainstay Human Resources Manager." The handbook does not state it is a "contract" or warn potential employees that they are giving up any rights. Rather, it states that "As an

employee of Mainstay Business Solutions, I consent to the exclusive jurisdiction of the Tribe's Dispute Resolution Process (DRP), these Handbook rules and the Tribal Court for any and all disputes in connection with my employment with the Mainstay Business Solutions." Defendants' Exhibit E.  Likewise Mainstay's application for employment is not a contract.  Neither Defendants' Exhibit E nor F show any consent to any forum selection provision by Mr. Yepez.  In fact, he denies he was ever given the handbook or signed any such document. *See* Yepez Declaration.

In addition, Mainstay's purported forum selection provision does not specifically exclude any other venue nor state that any dispute shall be submitted "only" in a Tribal Court.  *See Hunt Wesson Foods Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  As explained by the Ninth Circuit using the term "shall" in a forum selection provision, without more, means nothing more than a particular court will have jurisdiction, and "does not mean that the same subject matter cannot be litigated in any other court." 817 F.2d at 77.  Likewise, slipping in a word that an employee is waiving his right to federal court on federal claims by using the term "exclusive" is unconscionable.  Accordingly, even assuming that the provision was included in some binding contract, which Mainstay has failed to produce in support of its motion, the forum selection provision is not mandatory but only permissive.

Finally, without a controlling forum selection provision, there is no personal jurisdiction by the Tribal Court over Mr. Yepez.   His causes of action arise out of action in this district, not on any Tribal lands.  He does not live on Tribal lands.  Moreover, no witnesses nor documents are located on Tribal lands.  Not only would it be futile for him to commence an action in the Tribal court, but also such a court would not have jurisdiction over the evidence in this case.  Such a forum would clearly be inappropriate and inconvenient for resolution of this matter.

III.

CONCLUSION

Based on the foregoing, Plaintiff requests Defendants' motion to dismiss be denied. or alternatively, he permitted to conduct discovery with respect to the jurisdictional issues raised.

Respectfully submitted,

Dated: March 10, 2008        **JOSEPH FARZAM LAW FIRM**


By:_____/S/_____
    Joseph S. Farzam, Esq.
    Attorneys for Plaintiff
    MARIO YEPEZ